IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

PARKERSBURG

WILLIAM CUNNINGHAM,

      Plaintiff,

v.                        Case No. 6:06-cv-00169

COL. DAVID LEMMON, Superintendent,
West Virginia State Police,

      Defendant.

## AMENDED PROPOSED FINDINGS AND RECOMMENDATION[1]

Pending are Defendant's Motion to Dismiss (docket sheet document # 15) and Plaintiff's Motion for Summary Judgment (# 27). This matter is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## THE SUBJECT STATUTES

This civil action is a declaratory judgment action in which Plaintiff is seeking to have certain provisions of the West Virginia Sex Offender Registration Act, W. Va. Code §§ 15-12-1 et

---

[1] This Proposed Findings and Recommendation ("PF&R") has been amended simply to correct an error on page 30 concerning the citation to the rules governing the period for objections. In light of the error, the objection period shall run from the date of filing of this Amended PF&R.

seq., declared to be unconstitutional, null and void.   A brief discussion of the subject statutes will be helpful.

The Wetterling Act

As noted by Defendant in his Motion to Dismiss, the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program (hereinafter "the Wetterling Act"), 42 U.S.C. § 14071, which was enacted as part of the Violent Crime Control and Law Enforcement Act of 1994, conditions federal funding for law enforcement on a state's maintenance of a registry of persons convicted of certain sexual offenses, in accordance with specified minimum standards.   Pub. L. No. 103-322, Title XVII, §170101, 108 Stat. 2038 (1994)(codified at 42 U.S.C. § 14071).   Additionally, all participating states must include their registry in a national database of sexual offenders, thus, allowing all law enforcement agencies and citizens, in general, access to the registry information.   42 U.S.C. § 14071(b)(2)(B).   The Wetterling Act further requires that each registered person must verify his or her address at least annually.   42 U.S.C. § 14071(b)(3).   (# 16 at 2).

In 1996, 42 U.S.C. § 14071 was amended to establish a mandatory notification provision to the registration requirements. This provision, known as "Megan's Law," is presently codified as 42 U.S.C. § 14071(e).   Pub. L. No.104-145, 110 Stat. 1345.   (# 16 at 3).   The notification provision permits the disclosure of information collected under a state's registration program for "any

2

purpose permitted under the laws of the state" and authorizes the appropriate state agency to release relevant information, except for the identity of a victim, that is "necessary to protect the public."  The provision further provides that "[t]he release of information under this paragraph shall include the maintenance of an Internet site containing such information that is available to the public and instructions on the process for correcting information that a person alleges to be erroneous."  42 U.S.C. § 14071(e)(1) and (2).

The Wetterling Act also sets out minimum standards for the length of time an offender must be registered.  Specifically, 42 U.S.C. § 14071(b)(6) requires that all persons who qualify for registration must register for a period of ten years following his or her release from prison, or after being placed on parole, supervised release or probation, unless that person: (1) has one or more prior convictions for an offense involving a minor victim; (2) has been convicted of an aggravated sexual offense; or (3) has been adjudicated as a sexually violent predator, as defined in the Wetterling Act.  42 U.S.C. §§ 14071(b)(6)(A) and (B).  In those cases, the person must register for life.

<u>The West Virginia Sex Offender Registration Act</u>

In accordance with the Wetterling Act, the present version of the West Virginia Sex Offender Registration Act, W. Va. Code § 15-12-1 <u>et seq.</u> (2004)(hereinafter the "WVSORA"), was enacted in March

of 1999.[2]  Section 15-12-1a details the West Virginia Legislature's intent and purpose of the WVSORA:

> (a) It is the intent of this article to assist law-enforcement agencies' efforts to protect the public from sex offenders by requiring sex offenders to register with the state police detachment in the county where he or she shall reside and by making certain information about sex offenders available to the public as provided in this article.  It is not the intent of the Legislature that the information be used to inflict retribution or additional punishment on a person convicted of any offense requiring registration under this article.  This article is intended to be regulatory in nature and not penal.
>
> (b) The Legislature finds and declares that there is a compelling and necessary public interest that the public have information concerning persons convicted of sexual offenses in order to allow members of the public to adequately protect themselves and their children from these persons.
>
> (c) The Legislature also finds that and declares that persons required to register as sex offenders pursuant to this article have a reduced expectation of privacy because of the state's interest in public safety.

W. Va. Code § 15-12-1a.  The provision concerning a reduced expectation of privacy was added in amendments passed in 2000.

### a.  The registration provisions

Section 15-12-2(a) provides that the provisions of the WVSORA apply prospectively and retroactively.  Section 15-12-2(b) sets

---

[2]  According to Haislop v. Edgell, 593 S.E.2d 839, 843 (W. Va. 2003), West Virginia actually first enacted a sex offender registration law in 1993, prior to the passage of the Wetterling Act.  That provision was contained in Title 61 of the West Virginia Code, which governed "Crimes and their Punishment."  In 1999, the law was moved to Title 15, which concerns "Public Safety."

forth the offenses that subject an individual to the required registration, and the information that must be provided upon registration.[3]

Section 15-12-3 provides that, if there is a change in the registrant's information, he or she must inform the State Police of those changes within ten days. Section 15-12-10 requires the State Police to verify the addresses of those persons registered as "sexually violent predators" every ninety days, and all other registrants once a year. That section also provides that the State Police may require registrants to periodically submit new photographs and fingerprints as part of the verification process. Although the statute is silent as to how the verification process must be completed, the State of West Virginia has established

_____

[3] The required information includes: (1) the registrant's full name, including any aliases or nicknames; (2) the address where the registrant resides or intends to reside; (3) the name and address of the registrant's employer or anticipated future employer; (4) the name and address of any school or training facility that the registrant is attending or expects to attend; (5) the registrant's social security number; (6) a full-face photograph at the time of registration; (7) a brief description of the crime or crimes of conviction; (8) fingerprints; (9) information relating to any motor vehicle owned or regularly operated by the registrant; and (10) information relating to any internet accounts the registrant has, and screen names, user names, or aliases used on the internet.

Persons determined to be "sexually violent predators" must also provide information concerning certain identifying factors or physical characteristics, the history of his or her offense, and treatment received for any mental abnormalities or personality disorders.

W. Va. Code § 15-12-2(d).

regulations which require that the initial registration and the periodic verification process be done in person.  See 81 W. Va. Code St. R. § 14.17.5.

Section 15-12-4 contains the requirements for the duration of registration under the WVSORA for persons who have committed qualifying crimes as defined in section 15-12-2.  Similar to the requirements of the Wetterling Act, the default time period for registration is ten years.  However, under the WVSORA, all persons who have been convicted of an offense involving a minor victim must register for life.  W. Va. Code § 15-12-4(a)(2)(E).

Subsection (b) of that section allows a registrant to petition to have his or her name removed from the registry upon the overturning of the underlying conviction.  W. Va. Code § 15-12-4(b).  There is no provision in the WVSORA that permits the review of an offender's registration requirement based upon his or her rehabilitation or risk of recidivism.  Registration is based solely upon the existence of a prior conviction.

b.  The notification provisions

Section 15-12-5(b)(2) provides that the State Police "shall maintain and shall make available to the public at least quarterly the list of all persons who are required to register for life."  According to the state regulations, the lifetime offender list must be separated and disseminated by county of residence.  See 81 West Va. Code St. R. § 14.15.3 (2005).  Furthermore, the regulations

6

provide that the list of lifetime registered offenders in a particular county may be released to any resident of that county, following a telephone or written request, and must also be accessible through the internet. <u>See</u> 81 West Va. Code St. R. §§ 14.15.3.a and 14.15.4 (2005).

The regulations further provide that each registrant's Registration and Verification form and a photograph be provided to all authorized community and religious organizations that are to receive sex offender registration information, in accordance with the regulations. <u>See</u> 81 West Va. Code St. R. § 15.15.5 (2005). There are additional permissible notification/disclosure provisions in the regulations that are not detailed herein.

<u>**PLAINTIFF'S CLAIMS**</u>

In Plaintiff's initial Complaint (# 2), he asserts that the WVSORA is punitive in nature.   Beyond that, Plaintiff has not alleged any specific constitutional claim in his Complaint. However, because Plaintiff has cited to the United States Supreme Court decisions in <u>Smith v. Doe</u>, 538 U.S. 84 (2002), and <u>Kennedy v. Mendoza-Martinez</u>, 372 U.S. 144 (1963), which concern challenges to the retroactive application of legislation under the Ex Post Facto Clause of the United States Constitution, the undersigned construes Plaintiff's Complaint to be making a similar challenge.

In Plaintiff's first Memorandum and Supplemental Complaint, Plaintiff also alleges that there is "a problem with equal

7

protection and consideration under the law." (# 19). In both of Plaintiff's "supplemental complaints" (## 19 and 21), he also raises, for the first time, a due process challenge to the WVSORA. Thus, the undersigned will also address the constitutionality of the WVSORA under the Due Process and Equal Protection Clauses of the United States Constitution.

**DEFENDANT'S MOTION TO DISMISS AND REPLY BRIEF**

On June 28, 2006, Defendant filed a Motion to Dismiss (# 15) and a Memorandum in Support Thereof (# 16). The Memorandum addresses only Plaintiff's ex post facto challenge to the WVSORA. Defendant cites to Hensler v. Cross, 558 S.E.2d 330, 335 (W. Va. 2001) and Haislop v. Edgell, 593 S.E.2d 839 (W. Va. 2003), in which the Supreme Court of Appeals of West Virginia upheld the WVSORA under the West Virginia Constitution in the face of similar ex post facto challenges. Based upon these decisions, Defendant asserts that the WVSORA is regulatory in nature, and "inflicts no suffering, disability or restraint." (# 16 at 5).

Defendant further asserts that "[t]he mere fact that the Act imposes an affirmative restraint and imposes a sanction traditionally regarded as punishment for its violation does not override its non-punitive nature." (Id.)(citing Kansas v. Hendricks, 117 S. Ct. 2072 (1997)). Thus, Defendant argues that the WVSORA "is a regulatory statute which does not violate the prohibition against ex post facto laws." (Id. at 6).

In Defendant's reply brief, Defendant argues, for the first time, that Plaintiff was required to comply with the notice requirement contained in W. Va. Code § 55-17-3(a)(1), which requires a plaintiff to provide 30-days notice to the State of West Virginia before filing a lawsuit against the State. Accordingly, Defendant argues that Plaintiff's Complaint must be dismissed without prejudice. (# 20 at 1).

### PLAINTIFF'S SUR-REPLY AND MOTION FOR SUMMARY JUDGMENT

Plaintiff filed a sur-reply, asserting that the notice provision does not apply to actions filed in federal courts. (# 23). Plaintiff reiterates that argument, and without any further discussion, requests summary judgment on all of his claims, in his Motion for Summary Judgment. (# 27).

### STANDARDS OF REVIEW

For purposes of Defendant's Motion to Dismiss, "the Complaint must be construed in a light most favorable to Plaintiff and its allegations taken as true. Only if it appears that Plaintiff could prove no set of facts in support of his claim which would entitle him to relief should the motion be granted." Brock & Davis Co. v. Charleston Nat'l Bank, 443 F. Supp. 1175, 1181 (S.D. W. Va. 1977).

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate if the pleadings and evidence of record show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter

9

of law.  Fed. R. Civ. P. 56(c).  The undersigned will address both of the pending motions under these standards.

<u>**ANALYSIS**</u>

**A. APPLICABILITY OF W. VA. CODE § 55-17-1 <u>ET SEQ</u>.**

Defendant has argued that Plaintiff's Complaint should be dismissed because Plaintiff has not complied with the notice provision as stated in West Virginia Code § 55-17-3.  That section requires a complaining party to provide the chief officer of the governmental agency and the state Attorney General with notice of his or her intent to file suit at least 30 days prior to instituting a civil action.  W. Va. Code § 55-17-3.

Plaintiff, in turn, asserts that this notice provision does not apply to actions, such as this, that are filed in federal court.  In support of his assertion, Plaintiff points to the definition of an "Action," as stated in section 55-17-2, which states:  "'Action' means a proceeding instituted against a governmental agency <u>in a circuit court or in the supreme court of appeals</u> . . . ."  W. Va. Code § 55-17-2 (emphasis added).

Article 17 of Title 55 of the West Virginia Code is entitled "Procedures for Certain Actions Against the State."  Just from the title itself, it is apparent that the article does not govern <u>all</u> actions brought against the State of West Virginia, its agencies, or its officials.  The undersigned has not located any specific authority on this issue.

10

However, it stands to reason that, while the notice provision could be required in an action instituted in federal court under the court's "diversity of citizenship" jurisdiction, where the court will be required to apply state substantive law, it most certainly could not be required in cases, such as this, that are instituted under the court's "federal question" jurisdiction, where only federal law will be applied.  A state legislature has no authority to determine whether or how an action may proceed under federal law.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff was not required to comply with the notice provision contained in W. Va. Code § 55-17-3.  To the extent that Defendant has requested, in his reply brief, that Plaintiff's Complaint be dismissed on this basis, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Defendant's Motion to Dismiss.

### B.   EX POST FACTO CHALLENGE

Plaintiff has challenged the constitutionality of the WVSORA on the basis that it is punitive in nature and, thus, its retroactive application violates the Ex Post Facto Clause of the United States Constitution.  The Ex Post Facto Clause prohibits the passage of any ex post facto law, which can best be defined as one which increases the punishment for a criminal act after it has been committed.  See Collins v. Youngblood, 497 U.S. 37 (1990).

11

The undersigned first notes that, although the parties have agreed that Plaintiff is subject to lifetime registration under the WVSORA, there is nothing in the complaint documents or the briefs filed by the parties that confirms the nature of Plaintiff's triggering sexual offense or when he was convicted.  According to the West Virginia State Police's online Sex Offender Registry, Plaintiff was convicted of third degree sexual abuse[4] in 1993.  See www.wvstatepolice.com.  For purposes of the motions pending before the court, the undersigned will assume that this information is correct, and that Plaintiff's conviction occurred before the enactment of the present version of the WVSORA.

Plaintiff's claim appears to center around the WVSORA's requirement of periodic updates concerning a registrant's information.  A similar challenge to Alaska's sex offender registration act (hereinafter the "Alaska Act") was reviewed by the

---

[4]  W. Va. Code § 61-8B-9 provides as follows:

(a) A person is guilty of sexual abuse in the third degree when he subjects another person to sexual contact without the later's consent, when such lack of consent is due to the victim's incapacity to consent by reason of being less than sixteen years old.

(b) In any prosecution under this section it is a defense that: (1) The defendant was less than sixteen years old; or (2) The defendant was less than four years older than the victim.

(c) Any person who violates the provisions of this section shall be guilty of a misdemeanor, and, upon conviction thereof, shall be confined in the county jail not more than ninety days, or fined not more than five hundred dollars and confined in the county jail not more than ninety days.

United States Supreme Court in <u>Smith v. Doe</u>, 538 U.S. 84 (2002).
Based upon the undersigned's research, <u>Smith</u> appears to be the only
case involving an ex post facto challenge to a state's sex offender
registration act that has been considered by the United States
Supreme Court.   The only other United States Supreme Court case
involving any sort of constitutional challenge of a sex offender
registration act is <u>Connecticut Dept. of Safety v. Doe</u>, 538 U.S. 1
(2003), which involved a procedural due process claim.

      In <u>Smith</u>, the United States Supreme Court recognized that,
although it was the first time the court had considered a claim
that a sex offender registration and notification law constituted
retroactive punishment forbidden by the Ex Post Facto Clause, the
elements of such a review were already well-established.   The Court
further stated:

> We must "ascertain whether the legislature meant the
> statute to establish 'civil proceedings.'" <u>Kansas v.</u>
> <u>Hendricks</u>, 521 U.S. 346, 361, 117 S. Ct. 2072, 138
> L.Ed.2d 501 (1997).  If the intention of the legislature
> was to impose punishment, that ends the inquiry.  If,
> however, the intention was to enact a regulatory scheme
> that is civil and nonpunitive, we must further examine
> whether the statutory scheme is "'so punitive either in
> purpose or effect as to negate [the State's] intention'
> to deem it 'civil.'" <u>Ibid</u> (quoting <u>United States v. Ward</u>,
> 448 U.S. 242, 248-249, 100 S. Ct. 2636, 65 L. Ed.2d 742
> (1980)).   Because we "ordinarily defer to the
> legislature's stated intent," <u>Hendricks</u>, <u>supra</u>, at 361,
> 117 S. Ct. 2072, "'only the clearest proof' will suffice
> to override legislative intent and transform what has
> been denominated a civil remedy into a criminal penalty,"
> <u>Hudson v. United States</u>, 522 U.S. 93, 100, 118 S. Ct.
> 488, 139 L. Ed.2d 450 (1997)(quoting <u>Ward</u>, <u>supra</u>, at 249,
> 100 S. Ct. 2636)[other citations omitted].

13

538 U.S. at 92.  This test is also known as the "intents-effects" test.

It is clear from the statement of intent and findings in section 15-12-1a of the West Virginia Code that it was the objective of the West Virginia Legislature that the WVSORA be regulatory and non-punitive in nature.  Furthermore, the WVSORA is found in a section of the Code concerning "Public Safety." Therefore, the undersigned proposes that the presiding District Judge **FIND** that the manifest intent of the West Virginia Legislature was that the WVSORA be a non-punitive, regulatory provision to advance and promote public safety.

Thus, the only inquiry before this court is whether the effect of the WVSORA is unduly punitive, so that the retroactive application thereof violates the Ex Post Facto Clause.  This appears to be the focus of Plaintiff's claim.

In Smith, the Court referred to seven factors addressed in its prior decision in Kennedy v. Mendoza-Martinez, 372 U.S. 144 (1963) as being "useful guideposts" in determining the constitutionality of statutory provisions such as the ones in question here.  Those factors are:

> (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment - that is, retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally

14

be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

372 U.S. at 168-69.

The Supreme Court has provided no real guidance on the weight to be accorded each factor, other than to state that, generally, no single factor is determinative of the issue. <u>Hudson v. United States</u>, 522 U.S. 93, 101 (1997). Although, in <u>Smith</u>, the Court did state that the determination of whether there is a "rational connection to a non-punitive purpose" is a "most significant factor." 538 U.S. at 102.

Focusing on the inquiry of whether the regulatory scheme imposes an "affirmative disability or restraint," Plaintiff appears to be challenging the verification and update requirements of the WVSORA on the basis that the updates are required to be made in person. (# 2 at 1). Plaintiff asserts that this requirement places an "affirmative disability or restraint" upon the registrants. In <u>Smith</u>, the Court addressed a similar complaint as follows:

> The Court of Appeals [the Ninth Circuit] reasoned that the requirement of periodic updates imposed an affirmative disability. In reaching this conclusion, the Court of Appeals was under a misapprehension, albeit one created by the State itself during the argument below, that the offender had to update the registry in person. [citation omitted]. The State's representation was erroneous. The Alaska statute, on its face, does not require these updates to be made in person. And, as respondents conceded at the oral argument before us, the record contains no indication that an in-person appearance requirement has been imposed on any sex

offender subject to the Act. [Citation omitted].
538 U.S. at 101.  Addressing each of the <u>Mendoza-Martinez</u> factors,
the Court found that the Alaska Act was non-punitive in its effect.
<u>Id.</u> at 105-106.

Plaintiff attempts to distinguish the WVSORA from the Alaska
Act, claiming that the WVSORA does require that the updates be made
in person.  Plaintiff asserts that such a requirement is burdensome
and analogous to the sanctions imposed upon persons on probation or
parole, which are traditionally regarded as forms of punishment.
(# 2 at 1).

Defendant, on the other hand, asserts that the in-person
appearance is "purely regulatory."   (# 16 at 5).  He further
states:

> It imposes no burdensome requirement on the registered
> offender, and inflicts no suffering, disability or
> restraint.  The requirement places no restraints on the
> Plaintiff and the information requested to be divulged in
> the periodic updates are not burdensome to the offender.
> An offender whose conviction was overturned may petition
> the court for removal of their name from the registry.
> These provisions evidence an intent to regulate; they do
> not manifest any intent to punish.  The Act implicates
> none of the primary objectives of criminal punishment.

(<u>Id.</u>) Defendant reiterates that the West Virginia Supreme Court of
Appeals has twice found that the WVSORA is not punitive in nature.
<u>See</u> <u>Hensler v. Cross</u>, 558 S.E.2d 330, 336 (W. Va. 2001) and <u>Haislop</u>
<u>v. Edgell</u>, 593 S.E.2d 839 (W. Va. 2003).

In both <u>Hensler</u> and <u>Haislop</u>, however, the salient issues
concerned the added "disadvantage" or "burden" from the lifetime

16

registration process generally, and the resultant decreased right of privacy.   Neither case addressed the specific issue of the burden of the in-person verification process.   Accordingly, the undersigned will undertake a de novo review of the WVSORA using the Mendoza-Martinez factors to address this specific issue.

Looking at the first two factors - whether the WVSORA imposes an affirmative disability or restraint and whether the sanction has historically been regarded as punishment - the United States Supreme Court in Smith stated, "[h]ere we inquire how the effects of the Act are felt by those subject to it.  If the disability or restraint is minor and indirect, its effects are unlikely to be punitive."  538 U.S. at 99-100.

As noted by the Smith Court in addressing the Alaska Act, there is no actual physical restraint imposed, so it does not directly resemble the punishment of imprisonment.  Id. at 100. The same is true under the WVSORA.  Plaintiff argues, however, that the required in-person verification is analogous to probation or parole, which clearly impose an affirmative disability or restraint, and have historically been considered forms of punishment.  A similar argument was made in Smith.

Although the Ninth Circuit found that the registration process was punitive in nature, the Supreme Court held as follows:

> The Court of Appeals held that the registration system is parallel to probation or supervised release in terms of the restraint imposed.  259 F.3d at 987.  This argument has some force, but, after due consideration, we

17

> reject it.   Probation and supervised release entail a
> series of mandatory conditions and allow the supervising
> officer to seek the revocation of probation or release in
> case of infraction. [Citations omitted].   By contrast,
> offenders subject to the Alaska statute are free to move
> where they wish and to live and work as other citizens,
> with no supervision.   Although registrants must inform
> the authorities after they change their facial features
> (such as growing a beard) borrow a car, or seek
> psychiatric treatment, they are not required to seek
> permission to do so.   A sex offender who fails to comply
> with the reporting requirement may be subject to criminal
> prosecution for that failure, but any prosecution is a
> proceeding separate from the individual's original
> offense.   Whether other constitutional objections can be
> raised to a mandatory reporting requirement, and how
> those questions might be resolved are concerns beyond the
> scope of this opinion.   It suffices to say the
> registration requirements make a valid regulatory program
> effective and do not impose punitive restraints in
> violation of the Ex Post Facto Clause.

Id. at 101-02.   On this basis, a similar finding should be made

concerning the WVSORA.

Two other Mendoza-Martinez factors concern whether the

statute's provisions come into effect only upon a finding of

scienter and whether they apply to criminal behavior.   There is no

dispute that the WVSORA only applies to persons who have been

convicted of the enumerated sexual offenses.   Thus, it clearly

applies only to criminal behavior, which does support the finding

of a punitive effect.

Similar to the Alaska Act, the WVSORA generally requires a

finding of scienter for the underlying crime of conviction.

However, its provisions do not become applicable only upon such a

finding, as certain of the triggering crimes are crimes of strict

18

liability, such as Plaintiff's conviction for third degree sexual abuse.   This factor supports a finding that the WVSORA is not punitive.

The next factor considers whether the statute promotes the traditional aims of punishment - that being retribution and deterrence.   While it can be assumed that the general nature of the registration requirements may serve as some form of deterrence for future sex offenses, the focus of the courts in <u>Smith</u> was on the retribution element.

The Ninth Circuit found that the "onerous registration obligations appear to be inherently retributive."   Again, the court compared the registration process to the requirements of probation or supervised release.   The Ninth Circuit further held that the duration of the registration requirement provided additional support of a retributive objective.   259 F.3d at 989-90.   The Court stated that "the length of the reporting requirement appears to be measured by the extent of the wrongdoing, not by the extent of the risk posed."   <u>Id.</u> at 990.   The Supreme Court, however, again held that the Ninth Circuit had erred in its analysis of the Alaska Act, finding that the "broad categories . . . and the corresponding length of the reporting requirement, are reasonably related to the danger of recidivism, and this is consistent with the regulatory objective."   538 U.S. at 102.

Related to this factor are the final two factors - whether the Act serves a non-punitive purpose that is rationally connected to the Act, and whether the requirements of the Act appear excessive in relation to that purpose.   372 U.S. at 169.   As stated previously, it is apparent from the statutory language itself, that the purpose or intent of the WVSORA is to advance public safety, specifically concerning potential recidivism of sex offenders.  The United States Supreme Court has even stated that "[t]he risk of recidivism posed by sex offenders is 'frightening and high.'" 538 U.S. at 103 (quoting McKune v. Lile, 536 U.S. 24, 34 (2002).

Plaintiff has provided the court with a study by the United States Department of Justice concerning the rates of recidivism of sex offenders who were released from prison in 15 states in 1994. The study tracked a total of 9,691 offenders over a three-year period.  According to the study:

> Compared to non-sex offenders released from State prisons, released sex offenders were 4 times more likely to be rearrested for a sex crime.  Within the first 3 years following their release from prison in 1994, 5.3% (517 of the 9,691) of released sex offenders were rearrested for a sex crime. [2.2% of those were for a sex crime against a child].  The rate for the 262,420 released non-sex offenders was lower, 1.3% (3,328 of 262,240).

(# 18, Ex. D).  Plaintiff asserts that this study indicates that "there is no real clear evidence to suggest that there is some huge re-offense rate among [sex offenders].  (# 19 at 3).

In <u>Smith</u>, the Ninth Circuit agreed that the Alaska Act's purpose of advancing public safety was "valid and rational." 259 F.3d at 991. However, the Ninth Circuit further found that the Act was excessive in relation to its public safety purpose because it was "exceedingly broad." <u>Id.</u> at 993. This holding was primarily based upon the fact that the Alaska Act did not base its registration and reporting requirements on an individual assessment of the risk of recidivism.

In overturning the Ninth Circuit's decision finding that the Alaska Act was punitive, the Supreme Court stated that "[t]he Act's rational connection to a non-punitive purpose is a '[m]ost significant' factor in our determination that the statute's effects are not punitive." 538 U.S. at 102 (citing <u>United States v. Ursery</u>, 518 U.S. 267 (1996). The Court further found:

> In concluding the Act was excessive in relation to its regulatory purpose, the Court of Appeals relied in large part on two propositions: first, that the statute applies to all convicted sex offenders with regard to their future dangerousness; and second, that it places no limits on the number of persons who have access to the information. 259 F.3d at 991-992. Neither argument is persuasive.
>
> Alaska could conclude that a conviction for a sex offense provides evidence of substantial risk of recidivism. The legislature's findings are consistent with grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class. The risk of recidivism posed by sex offenders is "frightening and high." [citing <u>McKune</u>, <u>supra</u>, and the same study offered by Plaintiff herein].

The Ex Post Facto Clause does not preclude a State from making reasonable categorical judgments that convictions of specified crimes should entail particular regulatory consequences.  We have upheld against ex post facto challenges laws imposing regulatory burdens on individuals convicted of crimes without any corresponding risk assessment. [Citations omitted]. * * * * The State's determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not make the statute a punishment under the Ex Post Facto Clause.

Id. at 103-104.

In comparing the WVSORA to the Alaska Act, which was upheld under a similar ex post facto challenge, the requirements of the WVSORA are not so drastically different or more onerous so as to require a finding that the WVSORA is punitive in nature.  In fact, the United States Supreme Court has upheld much more onerous sanctions as being civil or remedial in nature.  See, e.g., Kansas v. Hendricks, 521 U.S. 346 (1997) and Seling v. Young, 531 U.S. 250 (2001)(finding that the civil commitment of sexually violent predators was not punitive, using these factors).

Plaintiff has not shown "by the clearest proof" that the effects of the WVSORA negate the West Virginia Legislature's intent to establish a civil regulatory scheme.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the WVSORA is regulatory in nature and, thus, its retroactive application does not violate the Ex Post Facto Clause of the United States Constitution.

22

### C.   PLAINTIFF'S SUBSTANTIVE DUE PROCESS CLAIMS

Although vaguely stated in Plaintiff's complaint documents, the undersigned has construed the documents to allege a substantive due process challenge to the WVSORA on two bases: first, that the act of registration is actually a form of surveillance by law enforcement without probable cause (# 19); and second, that the public labeling of persons as a "registered sex offender" is unduly prejudicial. (# 21). The undersigned will address each allegation in turn.

It is well-settled that the Fourteenth Amendment to the United States Constitution guarantees that "no person shall be deprived of life, liberty or property without due process of law." U.S. Const. Amend. XIV. Thus, the Fourteenth Amendment has been construed to "forbid[] the government to infringe certain 'fundamental' liberty interests *at all,* no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 301-302 (1993); Planned Parenthood of Southeastern Pennsylvania v. Casey, 505 U.S. 833, 851 (1992). However, if no fundamental right or liberty interest is implicated, legislation challenged on this basis will generally be presumed to be valid and will be upheld if the classification drawn by the statute is "rationally related to a legitimate state interest." See City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 440 (1985).

Plaintiff's due process claim appears, in part, to center around his belief that public access to the fact that he is a registered sex offender interferes with his ability to receive due process in any subsequent proceedings.  In document # 19, Plaintiff states:

> "Does the act of registration which the legislature says is to assist law enforcement in law enforcement duties interfere with probable cause that is needed in some forms of surveillance of "suspicious persons?"  And is the act a form of surveillance and does that make sex offenders a suspect class under constant surveillance and suspicion by law enforcement or others?  If so, does this interfere with due process in a subsequent criminal charge making it easier to convict a sex offender?  Is this form of surveillance without probable cause constitutional?

(# 19 at 1).   Plaintiff appears to elaborate on this issue in document # 21:

> There is a question here of due process.  The plaintiff was accused of misdemeanor stalking in 2004. The plaintiff invoked his 5th amendment rights and refused to speak to law enforcement about anything.  Soon later the plaintiff was arrested.  When arrested a rather larger than usual article come out in the newspaper saying "Sex offender arrested for stalking."

(# 21 at 1).  Plaintiff further asserts that this article resulted in "guilt by publication," after which he pled guilty to the charge and received probation and a fine.  (Id.)  In the due process context, Plaintiff has asserted that there is no "rational basis" for the publication of such evidence.  (# 21 at 2).

Defendant has not directly addressed this issue in his filings.  However, pointing to the Supreme Court of Appeals of West

24

Virginia's analysis in <u>Hensler v. Cross</u>, 558 S.E.2d 330, 335 (W. Va. 2001), Defendant asserts that "all of the information required by the WVSORA was public information and accessible to the public . . . ." (# 16 at 5).

The United States Supreme Court held that "mere injury to reputation, even if defamatory, does not constitute the deprivation of a liberty interest." <u>Connecticut Dept. of Public Safety v. Doe</u>, 538 U.S. 1, 6-7 (2003)(citing <u>Paul v. Davis</u>, 424 U.S. 693 (1976)). Thus, Plaintiff has not established the infringement of a liberty interest simply because the fact that he has been convicted of a prior sex offense is accessible to the public as a result of the WVSORA's registration requirements.

Moreover, to the extent that Plaintiff has asserted that and that such accessibility has affected his substantive due process rights in a subsequent prosecution, that argument must fail. The fact that Plaintiff has been convicted of a prior sex offense is a matter of public record, available to anyone through the records at the Wood County Courthouse. The reporter who allegedly labeled Plaintiff a "sex offender" in the newspaper could have just as easily determined that fact from the courthouse records, as from the Sex Offender Registry.

Moreover, to the extent that Plaintiff is claiming undue prejudice from the media coverage, there were procedural safeguards built into the judicial system to ensure that Plaintiff received a

25

fair trial by an unbiased jury.  Instead, Plaintiff pled guilty to his subsequent criminal charge.  To the extent that Plaintiff is claiming that his conviction on that charge arose from his required registration as a lifetime sex offender, in violation of his substantive due process rights, that claim also lacks merit.

Turning to Plaintiff's claim that the required registration of sex offenders constitutes unconstitutional surveillance, the West Virginia Legislature has stated in the WVSORA itself that "persons required to register as sex offenders pursuant to this article have a reduced expectation of privacy because of the state's interest in public safety."  W. Va. Code § 15-12-1a(c).  The undersigned proposes that the presiding District Judge **FIND** that Plaintiff cannot demonstrate either that he has a fundamental right or liberty interest to be free from the registration requirements of the WVSORA, or that the simple requirement of registration and verification of specified information constitutes "unconstitutional surveillance."

Because the WVSORA implicates neither a fundamental right or liberty interest, Defendant need only demonstrate that the provisions of the WVSORA are rationally related to a legitimate governmental purpose.  As has been clearly established in the prior section, the State of West Virginia has a reasonable and legitimate interest in protecting the health, safety and welfare of its citizens, and the registration and notification provisions of the

26

WVSORA are rationally related to achieving that purpose.

Thus, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff has failed to demonstrate that his substantive due process rights have been violated.

### D.   PLAINTIFF'S EQUAL PROTECTION CLAIM

Plaintiff also argues that the registration requirement for sex offenders violates his right to equal protection under the law. This allegation appears to be based on the fact that information is made public for sex offenders that is generally not made public for any other persons.

Specifically, Plaintiff states that the West Virginia Legislature recently passed a law that prevents a private citizen from running a check on a vehicle license plate number and obtaining the registered owner's address.  Plaintiff claims that this was done to prevent invasion of privacy and to hinder stalking.  Plaintiff asserts, however, that, because the addresses of sex offenders are available from the Sex Offender Registry, "[sex offenders] do not seem to be considered important enough to be protected as everyone else."  (# 19 at 2).

The Equal Protection Clause of the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  Essentially, the clause requires that all persons similarly situated should be treated alike by governmental

entities.  See City of Cleburne v. Cleburne Living Center, 473 U.S. 432 (1985); Plyler v. Doe, 457 U.S. 202, 216 (1982).  However, similar to the due process analysis, legislation is subject to rational basis scrutiny unless it discriminates against members of a suspect class or implicates a fundamental right.  City of Cleburne, 473 U.S. at 440; Schweiker v. Wilson, 450 U.S. 221, 230 (1981); Heller v. Doe, 509 U.S. 312, 319-320 (1993).

Moreover, "when social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude, United States Railroad Retirement Board v. Fritz, 449 U.S. [166] at 174, 101 S. Ct. at 459; New Orleans v. Dukes, [427 U.S. 297] at 303, 96 S. Ct. at 2516, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic process." City of Cleburne, 473 U.S. at 440.

To the extent that Plaintiff is arguing that sex offenders are a suspect or quasi-suspect class, neither the United States Supreme Court, nor the Fourth Circuit, has directly addressed this specific issue.  However, all of the courts that have addressed this issue have found that they are not.  See, e.g., United States v. Lemay, 260 F.3d 1018, 1030-31 (9th Cir. 2001); Roe v. Marcotte, 193 F.3d 72 (2d. Cir. 1999); Artway v. Atty. Gen., 81 F.3d 1235 (3d. Cir. 1996); Rublee v. Fleming, 160 F.3d 213 (5th Cir. 1998); Cutshall v. Sundquist, 193 F.3d 466 (6th Cir. 1999); Riddle v. Mundragon, 83 F.3d 1197 (10th Cir. 1996); Doe v. Moore, 410 F.3d 1337 (11th Cir.

2005)(sex offenders are not a suspect class for purposes of equal protection analysis).

Nor has Plaintiff demonstrated that a fundamental right is involved. See, e.g., Doe v. Tandeske, 361 F.3d 594, 597 (9th Cir. 2004)(holding that convicted sex offenders do not have a fundamental right to be free from registration and notification requirements). Thus, the court must presume that the WVSORA is valid, and must uphold it if the classification drawn by the statute is rationally related to a legitimate state interest. City of Cleburne, 473 U.S. at 440.

In enacting the WVSORA, the West Virginia Legislature set forth a rational basis for treating convicted sex offenders differently than other convicted criminals. The statutory language states, "[t]he Legislature finds and declares that there is a compelling and necessary public interest that the public have information concerning persons convicted of sexual offenses in order to allow members of the public to adequately protect themselves and their children from these persons." W. Va. Code § 15-12-1a(b). The undersigned proposes that the presiding District Judge **FIND** that the registration and notification requirements of the WVSORA are rationally related to the state's legitimate interest in public safety. Therefore, the undersigned further proposes that the presiding District Judge **FIND** that Plaintiff has failed to state a valid claim under the Equal Protection Clause.

It is clear that Plaintiff believes that there is no rational basis for this legislation and that the effects of the legislation are unduly harsh. However, the issues addressed by Plaintiff in his complaint and other documents are not issues to be addressed by the court. Rather, if Plaintiff believes that the West Virginia Legislature has improvidently judged the recidivism rates of sex offenders, or the actual danger to the public, those are issues that should be addressed to the legislature, in an attempt to change the law.

<u>**RECOMMENDATION**</u>

For all of the reasons stated herein, Plaintiff's Complaint and related documents fail to state a claim upon which relief may be granted. Furthermore, Plaintiff is clearly not entitled to judgment as a matter of law. Therefore, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Defendant's Motion to Dismiss Plaintiff's Complaint (# 15), and **DENY** Plaintiff's Motion for Summary Judgment (# 27).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (service/mailing), from the date of filing this

30

Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Plaintiff and counsel of record.

<u>February 14, 2007</u>
        Date

Mary E. Stanley
United States Magistrate Judge

31